UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

MARGARET M. HARDY and the                          :
HARDY FAMILY TRUST,                                :          Civil Case No.:
                                                   :
                            Plaintiffs,            :
                                                   :
          - against -                              :          **COMPLAINT**
                                                   :
KEVIN JOHN TIERNEY, KJT INVESTMENTS, and           :
KJT INVESTMENTS INCOME FUND,                        :
                                                   :
                            Defendants.            :
-----------------------------------------------------------------------x

Plaintiffs Margaret M. Hardy and the Hardy Family Trust (the "Trust") (collectively, Mrs. Hardy and the Trust are the "Plaintiffs"), by and through their counsel, Sichenzia Ross Ference LLP, for their Complaint against Defendants Kevin John Tierney, KJT Investments ("KJT") and the KJT Investments Income Funds (the "Fund") (collectively, Mr. Tierney, KJT and the Fund are the "Defendants"), allege as follows:

## SUMMARY OF THE ACTION

1.       This cases arises from Defendants' May 2017 solicitation of $250,000.00 from Plaintiffs to fund a fraudulent and unregistered securities offering.  From 2008 through October 2019, Defendant Kevin Tierney, a New York registered investment adviser and financial planner of his namesake investment advisory firm, KJT, were the investment advisers to Plaintiffs, and it was in this longstanding, advisor-client capacity that he and the co-Defendants under his control engaged in their misconduct and caused the Trust, and, therefore, Mrs. Hardy, to suffer a total loss.

2.       The security at issue, *i.e.*, the Fund, purports to be a note, investment contract or other financial instrument or interest in an "income fund" created, promoted and managed by Mr.

Tierney, the control person, and KJT.  The Fund is a security as defined in the federal securities laws.

3.      Mr. Tierney and/or KJT, in his or its capacity as general partner and investment adviser to the Fund, advised prospective Plaintiffs and, on information and belief, other investors, that the Fund would "invest[] in Private Securities, not available on [*sic*] open market in top quality companies with a variable interest rate that takes advantage of rising interest rates."

4.      Mr. Tierney was able to defraud Mrs. Hardy and, therefore, the Trust, into investing hundreds of thousands of dollars, which she and her deceased husband, Thomas Hardy, had earned and had diligently saved during their lifetimes, into a highly risky and illiquid fund – while she thought and understood that the Trust was investing in an extremely safe and liquid fund that would pay a guaranteed return of principal and interest.

5.      Mr. Tierney was able to accomplish this, in part, based on his promoting and marketing a dubious, one-page "term sheet" of the Fund, which KJT had sent from its New York offices through the mails to Mrs. Hardy in Grasonville, Maryland.

6.      Mr. Tierney supplemented this offering document with calls to Mrs. Hardy at her home in Grasonville, Maryland encouraging her to liquidate existing exchange-traded investments to fund the new investment opportunity.

7.      According to Mr. Tierney and KJT, the Fund promised a fixed rate of return of seven and one-half percent (7.5%) payable semi-annually and without any tax consequence to the investor, which it calculated to equate to a 11.19 % return.  Even more attractive, the Fund guaranteed this return on investment despite that it only had a one (1) year maturity date.

8.      In complete reliance on her trusted adviser's recommendations and his explanation of the Fund's "term sheet," the Trust, acting through its trustee and beneficiary, Mrs. Hardy, invested $250,000.00 in the Fund on or about May 17, 2017.

9.      Defendants failed to present Plaintiffs with any other offering documents, including, by way of illustration, a subscription agreement, a securities purchase agreement or an offering memorandum or prospectus, which would detail, among other issues, risk disclosures, conflicts of interest and costs and fees charged by the Fund or its manager, Mr. Tierney or KJT.

10.     Despite that Mr. Tierney and his sole proprietorship, KJT, are fiduciaries who are duty bound to always and only act in their client's best interest, Defendants *never* solicited the investment objectives, risk tolerance, investor understanding or liquidity needs of the Trust before presenting this unregistered security offering to Mrs. Hardy and the Trust.

11.     Defendants did not confer with Plaintiffs in any qualitative manner to determine if the purchase of this security was appropriate or suitable for the Trust (or its beneficiary, Mrs. Hardy).

12.     Since the date the Trust funded the investment, Defendants *never* provided Plaintiffs with any documents or information concerning the Fund, its organizational structure, its use of investor proceeds, the positions held in the portfolio of companies in which the Fund allocated investor principal (much less any proof that the Fund has made its promised investments), its *pre-* or *post*-default financial condition or its audited or consolidated financial statements.

13.     In January 2020, Mr. Tierney advised Mrs. Hardy that the Trust's investment in the Fund was so successful that it had grown from $250,000.00 to $350,000.00.

14.     Notwithstanding the claim, Defendants failed and refused to return *any* principal or interest (contractual plus default) since the investment's maturity date of May 17, 2018.   As a result of Defendants' unlawful conduct, Plaintiffs have suffered damages in excess of $350,000.00.

15.     On information and belief, Defendants did not invest the funds received from the Trust; rather, Defendants deposited and commingled the Trust's funds with other investors' funds solicited in this unregistered offering in a single bank account and misappropriated those funds for personal use.

16.     By engaging in this conduct, Defendants violated Sections 10(b) of the Exchange Act and Rule 10b-5 thereunder as well as Section 20(a) of the Exchange Act, and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act").   Furthermore, Defendants breached their contractual obligations to the Trust, breached their fiduciary duties to Plaintiffs and were unjustly enriched.  The instant action follows.

## PARTIES

17.     Margaret M. Hardy is a retired widow and resident of Grasonville, Maryland 21638.

18.     The Hardy Family Trust is a revocable living trust that was formed on or about January 7, 1999, and its sole, surviving trustee and its beneficiary is Margaret M. Hardy.

19.     On information and belief, KJT is a sole proprietorship and registered investment adviser with offices located at 56 Beaver Street, Suite 601, New York, New York 10004.  On information and belief, KJT also operates out of offices located at 860 Fifth Street, NW, Naples, Florida 34120.   According to KJT's most recent Form ADV, the advisor has 199 clients, manages assets of $16,323,486.00, provides tax preparation services and offers financial

planning services and portfolio management services for individuals and small businesses. Further, its Form ADV states that KJT does not maintain actual or constructive custody of its clients' accounts or assets.  According to its Form ADV, KJT is registered as an investment adviser registered only in the State of New York – *not* Maryland or Florida.

20.     On information and belief, Mr. Tierney is the owner, control person and president of KJT Investments (CRD Number 125906), and the general partner, managing member or principal of the Fund.  He also resides in New York.  Mr. Tierney is not registered as or affiliated with a registered broker-dealer.

21.     On information and belief, the Fund is an unregistered securities offering and is not registered with the United States Securities and Exchange Commission ("SEC") or any state securities division or agency.  On information and belief, the Fund also is not registered with the New York State, Department of State Division of Corporations as a domestic or foreign business (of any type, *i.e.*, association, corporation, partnership, limited partnership, or limited liability company) authorized to conduct business in New York State.

## JURISDICTION AND VENUE

22.     This action arises in part under Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

23.     This Court has subject matter jurisdiction over this action pursuant to Section 27(a) of the Exchange Act and Section 214 of the Advisers Act, and 28 U.S.C. § 1331 and 1332, and applicable principles of supplemental jurisdiction under 28 U.S.C. § 1367.  The state law claims in this action are so related to the federal claims that they form part of the same case or

controversy, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

24.     Venue is proper in this Court pursuant to Section 27 (a) of the Exchange Act, Section  214 of the Advisers Act, and 28 U.S.C. § 1391.

25.     Acts, practices and courses of dealing constituting violations alleged in this Complaint have occurred with the jurisdiction of the United States District Court for the Southern District of New York.  Mr. Tierney and KJT have offered and sold the unregistered securities of the Fund from KJT's offices in the County of New York, New York and are doing business in this district and/or are inhabitants of this district.

26.     Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices and courses of business alleged in this Complaint.

27.     Mr. Tierney and KJT promoted, and continue to promote, their investment advisory services and products on a public website: www.kjtinvestments.com.  KJT's website provides advisory clients with email access to Mr. Tierney and his team of advisory employees, which are located at 56 Beaver Street,  New York, New York, as well as portal account access to the brokerage accounts managed by Mr. Tierney and KJT and custodied at TD Ameritrade.

28.     KJT's site also provides customers with a contact and help service by which customers may email Mr. Tierney and KJT with questions and receive responses from Mr. Tierney or a representative of KJT, whose offices are located in Manhattan.

## FACTS RELEVANT TO ALL CLAIMS

29.     In or around September 2008, the Trust and Mrs. Hardy, individually, as well her since-deceased spouse, Thomas Hardy, individually, opened investment advisory accounts with

KJT and Mr. Tierney.  Plaintiffs maintained accounts with Mr. Tierney and KJT until in or around October 2019.

30.     In or around May 2017, while Plaintiffs were still advisory clients of Mr. Tierney and KJT Investments, Mr. Tierney contacted Mrs. Hardy and recommended that she withdraw $250,000.00 from of the accounts under KJT's management for a new investment opportunity that KJT was both offering and managing.

31.     After several phone calls from Mr. Tierney, the Trust liquidated existing equity and/or fixed income positions valued at or about $250,000.00, withdrew those proceeds and transferred same to Defendants to invest in the Fund, which Mr. Tierney acknowledged, in writing, on May 17, 2017.

**The KJT Investments Income Fund Offering Materials**
**Contain Material Misrepresentations and Omissions.**

32.     Mr. Tierney and KJT offered the Fund as an investment opportunity.  Defendants solicited investors, including Plaintiffs, in several ways.  Mr. Tierney contacted Mrs. Hardy as she and the Trust were investment advisory clients of KJT.  In addition, they used marketing materials and referrals to solicit investment in the Fund.

33.     At least with regard to Plaintiffs, Defendants did not utilize a private placement, confidential memorandum or subscription agreement to provide disclosures about the Fund; rather, Defendants provided Plaintiffs  with a "term sheet" that provided as follows:

> **DESCRIPTION: This fund invests in Private Securities, not available on [*sic*] open market in top quality companies with a variable interest rate that takes advantage of rising interest rates.  It has a capitalization of $5 million with a maximum of 10 investors.**

> **INTEREST RATE: 7 ½ % payable semi-annually TAX FREE KJT Investments pays all taxes, so no 1099 is required.  There are no taxable consequences to investors. 7 ½ % tax-free is equal to 11.19 % on a taxable basis.**

**MATURITY: One (1) year from date of investment.**

34.     Investment in the Fund was a security as that term is defined in the federal securities laws, including within the meaning of the Adviser's Act.

35.     Mr. Tierney supplemented the term sheet with a presentation and calls to Mrs. Hardy over the phone.  On information and belief, Mr. Tierney and employees of KJT were located within the district at the time of such communications to Plaintiffs.

36.     KJT's Form ADV did not and still does not disclose that KJT sponsors or participates in unregistered offerings of any types.  Defendants have *never* filed with the SEC a registration statement for the offer and sale of securities, *i.e.*, interests in the Fund.

37.     By failing to prepare essentially any offering materials, Defendants did not provide important information to Plaintiffs, and, on information and belief other investors, regarding the investment opportunity – the Fund – promoted by Mr. Tierney and KJT, such as information about the Fund's financial condition, the actual use of investors' proceeds or detailed disclosures of material terns and risks factors that made the offering speculative and high-risk.

38.     In other words, Defendants elected not to disclose information relevant to Plaintiffs, and, on information and belief other investors, to evaluate Mr. Tierney's representations and promises about the investment as presented orally by Mr. Tierney and as described in the Fund's term sheet *before* or *after* the Trust's investment was completed.

39.     Nonetheless, Defendants intentionally and misleadingly promoted the Fund as "safe", "liquid" and "tax free" investment to Plaintiffs.

40.     Mr. Tierney also marketed the Fund to Plaintiffs as an alternative investment to the volatile equities markets that guaranteed an "equity-like" return.

41.     In exchange for the investment, Defendants promised unusually high rates of interest for just a year.

42.     In fact, all of the material statements alleged herein were known by Defendants to be false and misleading when those statements were made:

- Defendants did not invest the Trust's funds in "top companies" in the United States;

- The Fund was not liquid;

- The Trust's funds were not secured, and the Fund did not hedge its underlying portfolio; and

- The Trust's funds were not "safe"; in fact, Defendants have never communicated to Plaintiffs how the Trust's funds were used.

43.     Defendants *never* disclosed the costs or fees associated with the Trust's investment in the Fund.

44.     Defendants *never* provided any offering materials to Plaintiffs to document or amplify the purported uses of the Trust's $250,000.00 investment in the Fund.

45.     Mr. Tierney had authority for the false and misleading statements and omissions made orally and in the terms sheet provided to potential investors in the Fund, including Plaintiffs.

46.     On information and belief, the Fund that was promoted by KJT and Mr. Tierney to Plaintiffs and other investors as nothing more than a fraudulent scheme that offered and sold unregistered securities the proceeds of which were misappropriated for other, *never*-disclosed uses that were exclusively controlled by Mr. Tierney, including to pay for personal expenses of Mr. Tierney.

47.     Mrs. Hardy is neither an experienced nor sophisticated investor generally nor one familiar with the significant risks of loss inherent in non-public/non-traded securities as to which no public market exists or may exist in the future to allow for redemption or liquidity.

48.     Mrs. Hardy, as trustee of the Trust, reasonably relied on the investment advice of their longtime, trusted investment adviser whom had exercised discretion over their brokerage accounts and had counseled Mrs. Hardy through prior market tumult and the passing of her husband.  Indeed, as a result, Mr. Tierney and his firm held a unique position of confidence and trust with Plaintiffs.

49.     Plaintiffs relied on Defendants' misstatements identified herein, and the misstatements and wrongs complained of here are both the direct and proximate cause of the Trust's financial losses.

**Mr. Tierney and KJT Mis-Manage Plaintiffs' Other Investments**

50.     In November 2019, Mrs. Hardy contacted Mr. Tierney to request that he liquidate $150,000.00 of her *other* investment assets under Defendants' management by December 2019 so that Mrs. Hardy could finance a real estate purchase.

51.     Although Mr. Tierney acknowledged her request, in writing, neither he nor KJT wired Mrs. Hardy the $150,000.00.  Concerned at her investment adviser's dubious explanation and refusal to simply wire her funds from the account(s) he managed, Mrs. Hardy persisted with her requests.

52.     On or about December 18, 2019, Mr. Tierney responded with a new excuse: he was traveling across the Midwest and KJT's bank – TD Bank – would ***not*** authorize an outgoing wire payment unless Mr. Tierney, whose investment advisory firm had been conducting business

since 1975, presented at a TD Bank branch location with his personal identification to authorize the transaction.

53.    In response to Mrs. Hardy's frustration and disappointment that neither Mr. Tierney nor any employees of KJT in its offices in Manhattan could send the monies to Mrs. Hardy so that she could timely close on her transaction, Mr. Tierney wrote, in relevant part, "I had planned to return everything to you after Christmas, which I still will do.  I am contacting some people who may be able to help but I am, still unable to wire money less I am physically present."

54.    Again, neither Mr. Tierney nor KJT did as they had promised, *i.e.*, no accounts were liquidated in December 2019 and no assets were wired or otherwise transferred to Plaintiffs.

55.    Although Mrs. Hardy was able to secure funds from another source, on December 30, 2019, she again requested that her investment adviser liquidate and transfer funds from her advisory account to her so that she could close on the transaction the she had initiated weeks earlier.  In this second request, however, Mrs. Hardy *reduced* the amount of funds she had requested from her account(s) from $150,000.00 to $100,000.00.

56.    Again, however, neither Mr. Tierney nor KJT wired ***any*** of the monies requested by Mrs. Hardy after Mr. Tierney returned to KJT's offices thereafter.

57.    On or about January 1, 2020, Mrs. Hardy wrote to Mr. Tierney, "Just tell me the truth do you have the money available or do I need to sell securities to get it."  Mr. Tierney did not respond to Mrs. Hardy and did not perform the actions requested, but his refusal to act in the best interest of his clients (much less honor an express client directive) was not limited to their other assets under Defendants' management and control.

**Defendants Breach Their Contractual Duties and Reveal Their Fraud**

58.     In or around October 2019, Plaintiffs terminated their advisory relationship with Mr. Tierney and KJT.   However, as her investment in the Fund was not custodied at TD Ameritrade but was still managed by Mr. Tierney and KJT, Mrs. Hardy contacted KJT's offices to request that KJT liquidate her investment in the Fund and return its overdue principal and interest.

59.     To her shock and surprise, the employees at KJT, including Cathy Mcginchey, denied knowledge and familiarity with the Fund, KJT's role as sponsor, issuer or manager of the Fund or the Trust's investment in the Fund.

60.     On or about January 23, 2020, Mrs. Hardy engaged local Maryland counsel to assist her in recovering her investment from Defendants.

61.     In a series of emails exchanged with Maryland counsel, Mr. Tierney acknowledged the Trust's $250,000.00 investment in the Fund and advised Plaintiffs' counsel that the value and balance of the investment had grown to $350,000.00 – an extraordinary, if not improbable, gain of approximately twenty-nine percent (29%) return.

62.     On January 27, 2020, Mr. Tierney wrote Mrs. Hardy a *personal check* from Mr. Tierney's own checking account – not from an account of the Fund or KJT – totaling $350,000.00.   In the accompanying check transmittal, Mr. Tierney wrote, "Since this is nontaxable I sent you a personal check."

63.     On January 31, 2020, the check bounced as the account lacked sufficient funds.

64.     In the days that followed, Plaintiffs unsuccessfully attempted to recover their investment, but Defendants terminated all communication with Plaintiffs and refused to issue the

Trust a bank check or send a wire or other form of payment for the purported $350,000.00 of principal and interest.

65.     On February 1, 2020, after Mr. Tierney was contacted by Plaintiffs' local, Maryland counsel to remedy the rejected payment, Mr. Tierney wrote, "I am now in the process of liquidating other assets far in excess of the check.  As soon as the money is available I will make a deposit to cover the check."

66.     Defendants *never* made a principal or interest payment, of any form, to the Trust or Mrs. Hardy.

## FIRST CLAIM FOR RELIEF
### Fraud In Connection With The Sale of Securities
### Violations Of Section 10(b) Of The Exchange Act
### And Rule 10b-5(b) Against Defendants

67.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

68.     In or around May 2017, Mr. Tierney and KJT, in connect with the purchase and sale of interests in the Fund, made false and misleading statements and omissions of material fact to Plaintiffs, and omitted to state material facts necessary to make their statements to Plaintiffs not misleading, which included the following:

a.     Falsely represented that the Fund was a "safe", "liquid" and "tax free" investment for the Trust;

b.     Falsely represented that the Fund would generated "equity-like" returns without the risks associated with the equities markets;

c.     Falsely represented that  the Fund would return all principal plus 11.5% interest at the first anniversary of the investment;

d.    Falsely represented that the Fund would invest in "top companies" in the United States;

e.    Failed to provide the Trust with updates and statements relating to the Fund, its portfolio of direct investments and their performance;

f.    Failed to provide offering documents to supplement the term sheet so that Plaintiffs, like other investors, could review and consider the risk disclosures, conflicts of interest associated with the Fund and its owner/issuer/manager, Mr. Tierney and KJT, and costs and fees associated with the management of the Fund; and

g.    Falsely represented that the Fund was a bona fide investment or to provide any tax documents relating to the Fund.

69.    The misrepresentations and omissions made by Mr. Tierney and KJT regarding the Fund were made "in connection with" the purchase or sale of securities to the Trust.  Each of the misrepresentations were made with the specific purpose of inducting Mrs. Hardy, as trustee of the Trust, to liquidate existing investments held by the Trust and invest in the Fund.

70.    Defendants knew or should have known that Plaintiffs would continue to rely on the fraudulent misrepresentations made by Mr. Tierney.

71.    By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the sale of a security, and by use or instrumentalities of interstate commerce and of the mails, made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72.     Defendants knew, or were reckless in not knowing, that they made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     As a direct and proximate result of the misrepresentations and omissions made by Defendants, and their unlawful conduct in violation of Section 10(b) and Rule 10b-5 thereunder, the Trust has been damaged and continues to be damaged, in an amount to be determined at trial, but not less than $350,000.00.

74.     By engaging in the conduct described above, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

**SECOND CLAIM FOR RELIEF**
**Fraud By The Investment Adviser**
**Violations Of Sections 206(1) And 206(2)**
**Of The Advisers Act Against Kevin J. Tierney and KJT**

75.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

76.     Since at least 2008, Mr. Tierney and KJT, for compensation, engaged in the business of advising and managing the investments of KJT clients, and, since the Fund's formation, directly advising the Fund, and thus the potential and actual investors in the Fund, as to the value of the securities or as to the advisability of investing in, purchasing or selling securities.  Therefore, Mr. Tierney and KJT were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act.

77.     Defendants were fiduciaries of their clients, including Plaintiffs.

78.     By engaging in the conduct described above, Mr. Tierney and KJT, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce: (a) employed devices, schemes or artifices to defraud clients or prospective clients; and (b) engaged

in transactions, practices, or courses of business which operated as a fraud or deceit upon Plaintiffs.

79.     Mr. Tierney and KJT knew, or was reckless in not knowing that he employed devices, schemes or artifices to defraud Plaintiffs and engaged in transactions, practices or courses of business which operated as a fraud or deceit upon Plaintiffs.

80.     By engaging in the conduct described above, Mr. Tierney and KJT violated Sections 206(1) and (2) of the Adviser Act.

**THIRD CLAIM FOR RELIEF**
**Control Personal Liability Under the Securities Act**
**Violations Of Section 15 Against Kevin J. Tierney and KJT**

81.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

82.     As alleged above, Mr. Tierney is the founder, owner and president of his sole proprietorship, KJT, and the unregistered offering, *i.e.*, the Fund, which he created, promoted and markets to investors in the marketplace, including Plaintiffs.

83.     Through his position, Mr. Tierney possessed the power and authority to cause KJT, through its marketing materials and term sheet, to offer unregistered securities for sale to the investing public.

84.     Mr. Tierney caused his sole proprietorship, KJT, to prepare certain offering materials, including a term sheet that included terms containing certain representations that supported a contract for the purchase of a security for the account of the Trust.  Defendants breached their contractual obligations to the Trust.

85.     By engaging in the conduct described above, Mr. Tierney and KJT violated Section 15 of the Securities Act.

### FOURTH CLAIM FOR RELIEF
### Control Personal Liability Under the Exchange Act
### Violations Of Section 20(a) Against Kevin J. Tierney

86. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

87. As alleged above, Mr. Tierney is the founder, owner and president of his sole proprietorship, KJT, and the unregistered offering, *i.e.*, the Fund, which he created, promoted and markets to investors in the marketplace, including Plaintiffs.

88. Mr. Tierney was a control person of KJT and the Fund within the meaning of Section 20(a) of the Exchange Act.

89. Through Mr. Tierney's role in creating and promoting the Fund and term sheet, his purported participation in its day-to-day operations and his control and influence over the Fund and the investments it made in other "top companies," Mr. Tierney was a control person within the meaning of Section 20(a) of the Exchange Act.

90. Through his position, Mr. Tierney possessed the power and authority to cause KJT, through its marketing materials and term sheet, to offer unregistered securities for sale in a fraudulent scheme to the investing public. He controlled, authored, or approved the false and misleading statements KJT and the Fund publicly made.

91. By engaging in the conduct described above, which constituted actions that violated Section 10(b) and Rule 10b-5 thereunder, Mr. Tierney also violated Section 20(a) of the Exchange Act.

92. Mr. Tierney, with the intent to deceive, manipulate or defraud the Trust, knew or reckless disregarded the falsity of the material misrepresentations, and the materially misleading

nature of the omissions, alleged above in connection with the offering and sale of interests in the Fund.

93.     Each of the misrepresentations alleged above were false, and the omissions were material.  Mrs. Hardy, as trustee of the Trust, considered, and similarly situated reasonable investors would have considered, them important in deciding whether to acquire the interests in the Fund.

94.     The failure of Mr. Tierney, as the sole proprietor of KJT and the creator, issuer and manager of the Fund, to falsely represent the safety, guarantee and liquidity of an investment in the Fund was material to Plaintiffs' assessment of the security of its interests in the Fund.  The Trust would not have purchased any interests in the Fund had Mrs. Hardy known the true facts.

95.     Accordingly, Mr. Tierney is liable as a control person under Section 20(a) of the Exchange Act for his all Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### FIFTH CLAIM FOR RELIEF
### Breach of Contract Against Defendants

96.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

97.     The Trust has satisfied all of its obligations to the Fund formed, promoted, offered and managed by Mr. Tierney and KJT.

98.     Defendants received and retained the Trust's $250,000.00.

99.     Defendants have breached their contractual obligations to the Trust by failing to repay the Trust the $250,000.00 plus contractual and statutory default interest at the rate of 9% per annum, or, as presented by Mr. Tierney, the sum of $350,000.00.

100.   Accordingly, the Trust has been damaged, and continues to suffer damages, as a result of Defendants' breach in an amount be determined at trial but, on information and belief, believed to be not less than $350,000.00.

**SIXTH CLAIM FOR RELIEF**
**Common Law Fraud Against Defendants**

101.   Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

102.   Each of the above misrepresentations and omissions were material in the sense that Plaintiffs considered them important and reasonably relied upon such statements and omissions in deciding to liquidate existing investments from the Trust's portfolio and to fund the Fund.

103.   As a consequence of the Trust's reliance on the foregoing misrepresentations and omissions made by the Defendants, the Trust has been injured.  Plaintiffs have been unable to recover the $250,000.00 initial investment in the Fund or any of the $100,000.00 interest gains or otherwise redeem its interests in the Fund, which Defendants have converted for their own use and misappropriation,

104.   Each of the Defendants acted either with knowledge that the foregoing statements were false (and the omissions material) or recklessly disregarded the falsity of these statements and the materiality of the omissions.

105.   The foregoing omissions were made, and misrepresentations were provided to Plaintiffs by each of Defendants for the purpose of inducing reliance.

106.   As a direct and proximate result of the misrepresentations and omissions made by Defendants, and their unlawful conduct, the Trust has been damaged and continues to be damaged, in an amount to be determined at trial, but not less than $350,000.00.

107.    As a result of the Defendants' fraudulent conduct, the Trust has been damaged and continues to be damaged, in an amount to be determined at trial, but not less than $350,000.00.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty Against Mr. Tierney and KJT**

108.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

109.    At all relevant times, Mr. Tierney and KJT were the investment advisors of Plaintiffs and owed them fiduciary duties as their registered investment advisers.

110.    As a result, Mrs. Hardy, as trustee of the Trust, and the Trust placed their trust and confidence in each of Mr. Tierney and KJT.

111.    Each of Mr. Tierney and KJT owed to Plaintiffs a duty: to ensure that an investment in the Fund was both suitable and in the best interest of the Trust (and its beneficiary) and conformed, at all times, to the Trust's investment objective, time horizons, liquidity needs and risk tolerance; to ensure that the Fund invested consistent with the representations made in the term sheet; of loyalty, candor and faithfulness; and to avoid self-dealing.

112.    Each of Mr. Tierney and KJT in fact exercised control over the Trust's investments in the Fund and ordered and implemented the misappropriation of the assets and funds pursuant to the operation of the Fund.

113.    Mr. Tierney and KJT knowingly, recklessly and negligently breached their fiduciary duties to the Trust by failing to monitor the investment made by the Trust in the Fund; permitting and assisting in the misappropriation and/.or misuse of the Trust's investments in the Fund; and failing to inform Plaintiffs and concealing the misuse of the Trust's investment principal.

114.    Mr. Tierney and KJT's breaches of fiduciary duty caused substantial damage to the Trust and continues to damage the Trust, in an amount to be determined at trial, but not less than $350,000.00.

## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment Against Defendants

115.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

116.    By the acts, practices, conduct and omission alleged above, each of the Defendants has improperly and unjustly obtained property and assets that properly belong to the Trust and which were misappropriated by the illegal conduct alleged herein.

117.    Defendants obtained the Trust's property and assets under circumstances in which it is not just, equitable or conscionable for Defendants to retain the Trust's property and assets. As a consequence of the foregoing, Defendants were unjustly enriched.

118.    Defendants should be ordered to disgorge the funds they received as a result of the Defendants violations of the securities laws and common law claims.

## NINTH CLAIM FOR RELIEF
### Conversion Against Defendants

119.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

120.    Through its trustee and local Maryland counsel, the Trust properly submitted requests to Defendants for repayment or redemption of all principal and interest arising from the Trust's May 2017 investment in the Fund.

121.    Upon receipt of these requests, Mr. Tierney, on behalf of KJT and the Fund acknowledged the investments and the requests for the return or redemption of all principal and

interest but Defendants, who separately or together improperly retained control and possession of such investment proceeds, failed and refused to make any payment to the Trust.

122.    The unauthorized, intentional and wrongful diversion of the trust's interest in the proceeds of the repayment or redemption of its underlying investment and interest by KJT and the Fund, in concert with Mr. Tierney, constitutes conversion.

123.    As a result of Defendants' conduct, the Trust has been injured in an amount to be determined at trial, but not less than $250,000.00 exclusive of costs, fees and interest.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

i)    Order Defendants, jointly and severally, to pay damages in an amount to be determined at trial but not less than $350,000.00, together with interest and the costs, pre- and post-judgment interest and disbursements of this action;

ii)    Order that all Defendants account to Plaintiffs for Defendants' profits and pay any damages sustained by the Trust arising from the foregoing wrongful and unlawful acts of Defendants and that, in accordance with such accounting, Plaintiffs be awarded judgment for such profits or damages;

iii)    Order that all Defendants be required to return all fees retained, from at least May 2017 to the present, received by them while they were in material breach of their contractual and fiduciary duties set forth above;

iv)    Order that Plaintiffs be awarded their costs and reasonable attorneys' fees incurred in connection with the institution and prosecution of this civil action; and

v)    Order such other and further relief as the Court shall deem just, equitable, and necessary.

Dated: April 24, 2020

SICHENZIA ROSS FERENCE LLP

By:/s/      Daniel Scott Furst
       Daniel Scott Furst
    1185 Avenue of the Americas, 37th Floor
    New York, New York 10036
    (212) 930-9700

    *Attorneys for Plaintiffs*